## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANIMAL LEGAL DEFENSE FUND, INC.<br>170 East Cotati Avenue, Cotati, CA,<br><br>Plaintiff,<br><br>v.<br><br>TOM VILSACK, SECRETARY,<br>United States Department of Agriculture,<br>1400 Independence Avenue SW, Room 200-A,<br>Washington, DC 20250,<br><br>and<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE,<br>1400 Independence Avenue SW,<br>Washington, DC 20250,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.  16-cv-914 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1.      This case, brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), challenges the United States Department of Agriculture's ("USDA") decision to completely exclude Plaintiff—Animal Legal Defense Fund ("ALDF"), an organization with a significant interest in the welfare of animals living at the Cricket Hollow Zoo ("the Zoo")—from participating in an ongoing agency proceeding concerning the Zoo's license to exhibit animals.

2.      Simple observations of the animals at the Zoo, as well as internal USDA documents, demonstrate that the Zoo is in violation of numerous "minimum standards" of the Animal Welfare Act ("AWA"), as promulgated by the USDA. The Zoo is in constant violation of AWA standards and other animal protection laws. If the Zoo applied for a license today, the USDA could not approve the Zoo's licensing request without violating the AWA's express requirement to only license facilities who can demonstrate compliance with the AWA standards.

3.      Since as early as 2004, the Zoo has received multiple non-compliance reports, official warnings, citations, and fines from the USDA. Many animals, including endangered animals, suffer and have died prematurely at the Zoo. Yet the USDA continues to allow the Zoo to operate.

4.      ALDF and its members have displayed profound interest in the animals at the Zoo. For many years, ALDF has expressed concern for the animals at the Zoo by attempting to submit information to USDA regarding the Zoo's harms to animal welfare, and by asking USDA to decline to renew the Zoo's annual license to exhibit animals. Yet the USDA has consistently rebuffed ALDF's efforts, stating that the agency *cannot even consider* ALDF's submissions when making decisions about the Zoo's licensing.

1

5.     On July 30, 2015, after ALDF had filed a lawsuit challenging the USDA's decision to renew the Zoo's license despite having acknowledged that the Zoo was in "chronic noncompliance" with AWA standards, the USDA's Animal and Plant Health Inspection Service ("APHIS") initiated an administrative proceeding against the Zoo. *See* AWA Docket Nos. 15-0152 – 0155.

6.     At the outset of the administrative proceeding, ALDF offered credible and relevant evidence to APHIS, seeking to assist the agency. APHIS declined the offer, explaining that the agency was "not comfortable with [ALDF's] proposal."

7.     Upon being initially rebuffed by APHIS, ALDF then moved to intervene in the license proceeding against the Zoo, pursuant to the APA and the USDA's Rules of Practice and Procedure, *e.g.*, 7 C.F.R. § 1.143(b).

8.     In opposing ALDF's motion to intervene, APHIS stated that "ALDF could simply provide [evidence] to APHIS," even though APHIS had just rejected ALDF's offer of evidence.

9.      On December 30, 2015, the USDA Administrative Law Judge denied ALDF's motion. On March 14, 2016, the USDA's Judicial Officer denied ALDF's appeal of the Administrative Law Judge's denial order.

10.     The USDA's decision denying ALDF's motion to intervene in the administrative proceeding, and its attendant blanket prohibition on ALDF's participation in the USDA's licensing proceeding against the Zoo, is arbitrary and capricious and in violation of the procedural requirements of the APA, 5 U.S.C. §§ 554-55, 706(2).

## JURISDICTION AND VENUE

11.     ALDF seeks review of a final order of the USDA's Judicial Officer pursuant to the Administrative Procedure Act, 5 U.S.C. § 704, and USDA regulations, 7 C.F.R. § 1.142(c)(4).

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1361 because ALDF alleges violations of federal law. This action constitutes a case and controversy under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq*., and the Animal Welfare Act, 7 U.S.C. §§ 2131 *et seq*., and applicable regulations and policies.

13.     Pursuant to 28 U.S.C. §§ 2201-02, the Court is authorized to provide declaratory and injunctive relief. Federal Rule of Civil Procedure 65 and the Administrative Procedure Act, 5 U.S.C. § 706, further authorize the Court to provide injunctive relief.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) because one Defendant is a federal agency headquartered in the District of Columbia, and because the agency action that forms the basis of this Complaint took place in the District of Columbia.

15.     In limited situations, the Animal Welfare Act authorizes direct review by the United States Court of Appeals. A Court of Appeals will review an order that aggrieves "any dealer, exhibitor, research facility, intermediate handler, carrier, or operator of an auction sale." 7 U.S.C. § 2149(c). ALDF does not fit within any of the categories identified in section 2149(c), and, therefore, seeks judicial review by this Court under the general jurisdiction and venue statutes.

## PARTIES AND STANDING

16.     Plaintiff ANIMAL LEGAL DEFENSE FUND ("ALDF") is a national non-profit organization headquartered in Cotati, California, with more than two hundred thousand members and supporters. ALDF pursues its mission of safeguarding animal welfare by advocating against cruelty and needless harm to animals and by advocating for the protection of animals used in commercial enterprises. ALDF frequently focuses on animal husbandry practices and the confinement of animals used for entertainment and exhibition purposes.

17.    ALDF is a "person" within the meaning of the APA, 5 U.S.C. § 551(2), which defines "person" to include any "individual, partnership, corporation, association or public or private organization other than an agency."

18.    ALDF has expended significant organizational resources on advocacy and public education efforts to improve the welfare of animals held in captivity, particularly the animals held for exhibition and entertainment at the Cricket Hollow Zoo.

19.    ALDF has acquired a large amount of information about the treatment of the animals at the Zoo.

20.    ALDF brings this action on behalf of its members, who enjoy observing, interacting with, and otherwise enjoying animals at the Zoo. These interests are harmed by Defendants' unlawful decision to completely exclude ALDF from participating in the USDA license adjudication proceeding against the Zoo, which will affect how, or whether, the Zoo will continue to exhibit the animals at the Zoo. The Zoo's treatment of the animals will, in turn, affect the demeanor, behavior and condition of the animals at the Zoo, and ALDF and its members' ability to enjoy viewing the animals.

21.    ALDF's members' aesthetic, emotional, and educational interests in the animals at the Zoo will be redressed if Plaintiff prevails in this case, because ALDF will be able to present credible and relevant information about the Zoo. If Plaintiff prevails, ALDF will have the opportunity to submit information to the USDA in order to persuade the agency to require the Zoo to either improve the conditions under which the animals are maintained, or no longer exhibit the animals at the Zoo and transfer the animals to another facility that will treat the animals more humanely. In either event, ALDF members who have aesthetic interests in

observing the animals at the Zoo could visit the animals as often as possible and enjoy the animals in a more humane setting.

22.    On June 11, 2014 ALDF brought a citizen suit in the United States District Court for the Northern District of Iowa, alleging that the Zoo was violating the Endangered Species Act.

23.    In support of this action, ALDF conducted extensive discovery to present its Endangered Species Act case at trial.

24.    ALDF attempted to share with APHIS, at the outset of the APHIS administrative proceeding against the Zoo, the relevant evidence that ALDF obtained through its Endangered Species Act lawsuit's discovery. Such discovery materials included Zoo owner depositions and the Zoo's veterinary records.

25.    On February 11, 2016, the Northern District of Iowa ruled for ALDF and the other plaintiffs, and against the Zoo.

26.    The Northern District of Iowa found that "Animal Legal Defense Fund has standing as a plaintiff."

27.    The district court held that because the conditions at the Zoo fell below the minimal standards of the Animal Welfare Act, the Zoo had unlawfully "taken" the endangered tigers and lemurs, in violation of the Endangered Species Act. *Kuehl v. Sellner*, 2016 U.S. Dist. LEXIS 17664 (N.D. Iowa Feb. 11, 2016) (citing 50 C.F.R. § 17.3). The Zoo recently appealed the decision to the U.S. Court of Appeals for the Eighth Circuit.

28.    Under USDA regulations, the Zoo must apply to APHIS to renew its Animal Welfare Act exhibitor's license every year.

29.    ALDF has attempted on numerous occasions to persuade APHIS not to renew the Zoo's license.

30.    On April 30, 2014, ALDF requested that the agency not renew the Zoo's license. ALDF submitted numerous materials, including agency inspection reports and letters from animal welfare experts.

31.    APHIS erroneously responded to ALDF's request by claiming it had renewed the Zoo's license on April 27, 2014. ALDF later obtained the Zoo's 2014 license application through a Freedom of Information Act request, and discovered that APHIS did not even received the application until May 8, 2014.

32.    APHIS declined to consider the information that ALDF had offered in its April 30, 2014 non-renewal request letter. In its response to the non-renewal request, APHIS also explained that it had renewed the Zoo's license without considering any of the information that ALDF submitted.

33.    On August 25, 2014, after being denied the opportunity to submit information to APHIS for its consideration during Zoo's license renewal process, ALDF and other plaintiffs brought suit against the USDA. *See Animal Legal Def. Fund v. Vilsack*, 14-cv-1462-CKK (D.D.C.) ("*Vilsack* lawsuit"). That lawsuit challenges the agency's decisions to continually renew the Zoo's license, in violation of the Animal Welfare Act provision that "no such license shall be issued" unless the facility can demonstrate compliance with all applicable standards. The district court dismissed the lawsuit, and plaintiffs have appealed the dismissal to the Court of Appeals for this Circuit.

34.    On July 30, 2015, while the *Vilsack* lawsuit was pending before the district court, APHIS initiated an administrative license enforcement proceeding against the Zoo.

35.    On August 17, 2015, ALDF contacted APHIS with information relevant to the proceeding against the Zoo. APHIS refused to accept the information.

36.     On August 18, 2015, counsel for APHIS, Colleen Carroll, responded that she was "not comfortable with [ALDF's] proposal," and declined ALDF's "offer to share [its] evidence or to discuss pending Animal Welfare Act matters."

37.     On October 28, 2015, ALDF filed a motion to intervene in the proceeding. ALDF requested intervenor status so that it could present the Administrative Law Judge with information relevant to AWA's licensing proceeding against the Zoo.

38.     The information that ALDF sought to introduce included deposition testimony and other discovery information, such as sworn affidavits and interrogatories from the Zoo owners. Because the Zoo is a respondent in the administrative proceeding, the information that ALDF sought to introduce consisted entirely of the Zoo owners'—*i.e.*, the respondents'—admissions.

39.     The USDA's denial of that motion denied Plaintiff the right to participate in the AWA proceedings, creating a complete ban on ALDF's opportunity to participate as an interested person or an interested party in an ongoing agency adjudication.

40.     The Court can redress ALDF's procedural injuries by allowing ALDF to submit information before the USDA in the administrative proceeding against the Zoo.

41.     Defendant the UNITED STATES DEPARTMENT OF AGRICULTURE ("USDA") is a federal agency headquartered in Washington, D.C. The USDA is tasked with administering and enforcing the AWA.

42.     Defendant THOMAS VILSACK ("the Secretary") is sued in his official capacity as the Secretary of the USDA. The Secretary is the federal official who bears ultimate responsibility for implementation of the AWA, including the administration of administrative proceedings against licensed exhibitors. In his official capacity, the Secretary resides in Washington, D.C.

## LEGAL BACKGROUND

### The Animal Welfare Act

43.    The AWA's stated purpose is "to insure that animals intended for use in research

facilities or for exhibition purposes or for use as pets are provided humane care and treatment." 7

U.S.C. § 2131(1).

44.    The AWA authorizes the Secretary to establish a licensing system for animal exhibitors

and to set minimal animal husbandry standards for compliance. *Id.* §§ 2133, 2143.

45.    The AWA authorizes the Secretary to suspend or revoke an exhibitor's license if the

Secretary determines the exhibitor has violated any provision of the AWA "or any of the rules or

regulations or standards promulgated by the Secretary" under the AWA. *Id.* § 2149.

46.    Administrative proceedings concerning a facility's compliance with AWA standards

must occur "on the record." *Id.* The statute does not require the proceedings to occur "on the

record, after opportunity for an agency hearing," pursuant to 5 U.S.C. § 554(a).

47.    The AWA statutory text is silent on the subject of intervention in administrative

proceedings.

48.    The AWA permits the Secretary "to promulgate such rules, regulations, and orders as

he may deem necessary in order to effectuate the purposes of this chapter. 7 U.S.C. § 2151.

49.    The Secretary relies on the USDA's Rules of Practice to govern AWA adjudications. 7

C.F.R. §§ 1.130 – 1.175. The Rules of Practice are titled, in entirety, "Rules of Practice

Governing Formal Adjudicatory Proceedings Instituted by the Secretary under Various Statutes."

*Id.*

50.    On information and belief, the USDA has not taken a position on whether the

administrative proceedings under the AWA are formal or informal adjudications within the

meaning of the APA. In deciding ALDF's appeal of the Administrative Law Judge's denial of the motion to intervene, the Judicial Officer did not determine the character of the proceedings.

51.   The Rules of Practice explicitly provide that "any motion will be entertained other than a motion to dismiss on the pleading." 7 C.F.R. § 1.143(b).

52.   The Rules of Practice do not expressly discuss intervention, but do allow for third party participation. *E.g.*, *id.* §§ 1.133(a), 1.141(b) n.2, 1.141(h)(4), 1.147(a).

### The Administrative Procedure Act

53.   The Administrative Procedure Act establishes the procedural requirements for agency conduct unless otherwise specified by statute. 5 U.S.C. §§ 551-559.

54.   "Adjudication" means an "agency process for the formulation of an order." *Id.* § 551(7). "Order" means the "whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." *Id.* § 551(6). An "agency proceeding" means an "agency process as defined by [rule making, adjudication, and licensing]." *Id.* § 551(12).

55.   In formal adjudicatory proceedings, an agency "shall give all interested parties" an opportunity for "the submission and consideration of facts" and "arguments." *Id.* § 554(c).

56.   The APA does not define the term "interested parties."

57.   In informal adjudicatory proceedings, the APA requires that, "[s]o far as the orderly conduct of business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function." *Id.* § 555(b).

58.   The APA does not define the term "interested persons."

59.    APA section "555(b) is universally understood to establish a right of an interested person to participate in an ongoing agency proceeding." *Block v. SEC*, 50 F.3d 1078, 1085 (D.C. Cir. 1995).

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

60.    Each and every allegation above is incorporated herein by reference.

61.    Cricket Hollow Zoo is a roadside menagerie with a long history of violating the AWA. Violations of AWA standards have persisted for over a decade, during which time animals at the Zoo have suffered and died from substandard conditions.

62.    APHIS has acknowledged the Zoo's persistent violations. For example, APHIS Western Regional Director Robert Gibbens wrote in 2006 that "it is clear that there is a chronic management problem at the facility, and for whatever reason, the [Zoo owners] either do not understand the regulations, are not willing to comply, or are not able to comply." Six years later, in 2012, Gibbens wrote again that the Zoo "has been in chronic non-compliance since July 2010." And in 2014, APHIS Administrator Kevin Shea wrote that since 2013, the agency found "numerous noncompliances" during its inspections of the Zoo.

63.    ALDF has repeatedly raised its concerns about the Zoo to Defendants, only to have its efforts rebuffed at every turn.

64.    On April 30, 2014, ALDF presented to Defendants information relevant to the Zoo's application to renew its AWA license. APHIS refused to consider the information that ALDF submitted.

65.    On August 25, 2014, ALDF brought the *Vilsack* lawsuit, challenging the USDA's position that the Zoo did not have to demonstrate compliance with AWA standards before the agency would renew the Zoo's license, in contravention of the AWA, 7 U.S.C. § 2133.

66.    On July 30, 2015, while the *Vilsack* lawsuit district court decision was pending, APHIS instituted an administrative licensing proceeding against the Zoo. APHIS's administrative complaint alleges that the Zoo repeatedly violated numerous AWA standards.

67.    APHIS mooted a challenge to the renewal process by filing an administrative complaint against a North Carolina roadside zoo. In *Ray v. Vilsack*, after the district court denied the agency's motion to dismiss, APHIS commenced an administrative proceeding to suspend the roadside zoo's AWA exhibitor license. The district court then dismissed the lawsuit. *Ray v. Vilsack*, 2014 U.S. Dist. LEXIS 101087 (W.D.N.C. July 24, 2014).

68.    After filing its administrative complaint against the Zoo, APHIS has not diligently litigated the action. APHIS has missed numerous evidentiary deadlines set by the USDA Administrative Law Judge. In the administrative proceeding, the Zoo moved to dismiss the administrative complaint on the basis of APHIS's missed deadlines. On information and belief, the Judge denied the Zoo's motion to dismiss, and the administrative proceeding is ongoing.

69.    According to a 2014 Audit Report prepared by the USDA's Office of Inspector General ("OIG"), APHIS in 2005 "was not aggressively pursuing enforcement actions against violators of AWA and was assessing minimal monetary penalties."

70.    A 2010 OIG Audit Report "found that APHIS' enforcement process was ineffective, and that the agency was misusing its own guidelines to lower penalties for AWA violators."

71.    On August 17, 2015, shortly after APHIS initiated its disciplinary proceeding against the Zoo, ALDF contacted APHIS offering to share relevant, reliable information for its use in that proceeding. The following day, APHIS counsel declined to accept ALDF's information.

72.    Having been turned away, on October 28, 2015 ALDF attempted to intervene in the administrative proceeding.

73.    ALDF has a longstanding interest in the welfare of the animals at the Zoo.

74.    The Administrative Law Judge denied the motion to intervene in a brief order on December 20, 2015. The Judge reasoned, "The instant matter involves an enforcement action brought by the Secretary of Agriculture to determine whether the [Cricket Hollow Zoo] violated the AWA and if so, what civil penalties should be imposed. This authority rests solely with the Secretary, and [ALDF's] presence in the case would represent interference with that authority." The Judge also stated that "the viewpoints and positions of a non-party are not relevant to the ultimate findings of fact and conclusions of law," and, therefore, ALDF could not be an intervenor party.

75.    On February 4, 2016, ALDF appealed the Judge's determination to the Judicial Officer, the USDA appellate body.

76.    On March 14, 2016, the USDA's Judicial Officer denied ALDF's appeal.

77.    The Judicial Officer stated, "while the Rules of Practice do not explicitly foreclose intervention, the Rules of Practice do not explicitly provide for intervention by third parties, and the Judicial Officer has long held that the Rules of Practice do not provide for intervention by third parties."

78.    The Judicial Offer held that ALDF was not an "interested party" after he decided to use the different APA statutory terms "interested parties," 5 U.S.C. § 554(c), and "party," *id.* § 551(3), interchangeably. The Judicial Officer found that because there is "no basis for concluding that the Animal Legal Defense Fund is 'entitled as of right to be admitted as a party,'" then ALDF "is not an 'interested party,' as that term is used in 5 U.S.C. § 554(c)." The Judicial Officer erroneously did not find that there was any difference in meaning between the APA terms "party" and "interested party."

79.     The Judicial Officer determined that he "would deny [ALDF's] Appeal Petition because the appearance of [ALDF] in this proceeding would disrupt the orderly conduct of public business" because ALDF's interest extends beyond the purposes of the AWA.

80.     In making his determination, the Judicial Officer did not reject ALDF's claim to be an "interested person" under 5 U.S.C. § 555(b).

81.     The Judicial Officer did not consider limiting the scope of ALDF's participation in the proceeding as an intervenor or interested third party.

82.     The USDA not only denied ALDF an opportunity to obtain full party status in the proceedings, it also denied ALDF all participatory privileges, including the opportunity to file a brief or submit other relevant information before the agency.

83.     By denying ALDF's attempt to participate in the administrative proceeding, the USDA created a complete ban on public participation in ongoing agency adjudications for the Zoo's license.

84.     ALDF's interests are not adequately represented by the other parties to the administrative proceeding.

85.     APHIS has allowed the Zoo to continue operating despite years of having senior agency officials acknowledging that the Zoo is in constant violation of AWA standards.

86.      APHIS stated in its briefing on the motion to intervene before the Administrative Law Judge "that it does not share ALDF's views."

87.     ALDF only seeks to provide relevant information to assist the USDA in making a reasoned decision regarding the Zoo's license to exhibit animals under the AWA. As a result of ALDF's participation in the Endangered Species Act lawsuit against the Zoo, ALDF possesses sworn testimony from the Zoo owners' in the form of deposition transcripts, affidavits, document

production responses and interrogatories responses. These party admissions are relevant and should be considered useful to the USDA's decision-making process in its adjudicatory enforcement proceedings.

88.    ALDF does not seek to usurp USDA's enforcement authority nor to ask this Court to award monetary penalties against the Zoo, but instead seeks to assist USDA in the development of the agency's record and obtaining appropriate injunctive relief from the Administrative Law Judge.

## CLAIMS FOR RELIEF

### Claim One: First Violation of the Administrative Procedure Act

89.    Each and every allegation set forth above is incorporated herein by reference.

90.    The USDA's interpretation of its Rules of Practice, which is that the Rules do "not provide for intervention by third parties," completely disallows interested person participation.

91.    By denying ALDF the opportunity to participate in the ongoing administrative proceedings against the Cricket Hollow Zoo on the basis of its interpretation that intervention is foreclosed, the USDA created a blanket prohibition on ALDF's participation in an adjudicatory proceeding, in violation of the APA, 5 U.S.C. §§ 554(c), 555(b).

92.    A blanket prohibition on ALDF's participation is in direct violation of APA, 5 U.S.C. § 554(c), which requires that agencies allow for "interested parties" to participate in formal adjudications.

93.    Alternatively, a blanket prohibition on ALDF's participation is in direct violation of APA, 5 U.S.C. § 555(b), which requires "interested person" participation in informal adjudicatory proceedings.

94.     Under the APA, a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

95.     The USDA's complete denials of participation by interested persons were, therefore, "not in accordance with law" and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

**Claim Two: Second Violation of the Administrative Procedure Act**

96.     Each and every allegation set forth above is incorporated herein by reference.

97.     The USDA ruled that ALDF was not an "interested party," within the meaning of the APA, *id*. § 554(c), by determining that ALDF did not meet the APA's definition of "party," *id.* § 551.

98.     The USDA also ruled, in the alternative, that ALDF's participation would interfere with the "orderly conduct of public business," *id*. § 555(b), but provided no reasoning or basis for its conclusion that ALDF would interfere with the proceeding.

99.     By concluding that ALDF was not an "interested party" without explaining the difference between "party" and "interested party," and by concluding, without support, that ALDF's participation as an "interested person" would disrupt the "orderly conduct of public business," the USDA Judicial Officer's decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and violated the APA, *id*. § 706(2)(A), and the AWA, 7 U.S.C. §§ 2131, 2149.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Animal Legal Defense Fund requests that this Court:

1.     Declare, pursuant to 28 U.S.C. § 2201, that Defendants violated Administrative

Procedure Act sections 554(c) and/or 555(b) by prohibiting public participation in the USDA's

Animal Welfare Act administrative proceeding against the Cricket Hollow Zoo, AWA Docket

Nos. 15-0152 – 0155;

2.     Make a finding that ALDF is an "interested party" or an "interested person" within the

meaning of the APA;

3.     Order the Defendants to allow ALDF to participate as an intervenor in the USDA's

administrative proceeding against the Zoo, AWA Docket Nos. 15-0152 – 0155;

4.     Order the Defendants to consider ALDF's evidence in the USDA's administrative

proceeding against the Zoo, AWA Docket Nos. 15-0152 – 0155 to determine its credibility and

relevance;

5.     Award ALDF its reasonable attorney fees and costs in this action, and;

6.     Grant ALDF such other and further relief the Court may deem just and proper.


Dated: May 13, 2016                              Respectfully submitted,

                                                 */s/ Daniel H. Lutz*
                                                 Daniel H. Lutz, D.D.C. Bar No. D00424
                                                 Hope Babcock, D.C. Bar No. 14639

                                                 Institute for Public Representation
                                                 Georgetown University Law Center
                                                 600 New Jersey Avenue NW, Suite 312
                                                 Washington, DC 20001
                                                 Tel: (202) 662-9535
                                                 Fax: (202) 662-9634
                                                 daniel.lutz@law.georgetown.edu
                                                 babcock@law.georgetown.edu

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  16-cv-914 |
| ) | |
| TOM VILSACK, SECRETARY, and ) | |
| UNITED STATES DEPARTMENT OF ) | |
| AGRICULTURE, ) | |
| ) | |
| Defendants. ) | |

### LOCAL RULE 7.1 CERTIFICATE

I, the undersigned counsel of record for Animal Legal Defense Fund, Inc. ("Plaintiff")

certify that to the best of my knowledge and belief, Plaintiff has no parent companies,

subsidiaries, or affiliates with outstanding securities in the hands of the public. This

representation is made in order that judges of this Court may determine the need for recusal.


Dated: May 13, 2016                              */s/ Daniel H. Lutz*

Daniel H. Lutz (D.D.C. Bar No. D00424)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001
Tel: (202) 662-9535
daniel.lutz@law.georgetown.edu

*Counsel for Animal Legal Defense Fund*