UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>    Plaintiff,<br><br>v.<br><br>TOM VILSACK, Secretary of Agriculture,<br>*et al.*,<br><br>    Defendants. | Civil No. 1:16-cv-00914 (CRC) |

## CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants, by and through undersigned counsel, move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The grounds for this motion are set forth more fully in the accompanying memorandum of law. A proposed order is attached.

                    Respectfully submitted,

                    CHANNING D. PHILLIPS
                    D.C. Bar # 415793
                    United States Attorney

                    DANIEL F. VAN HORN
                    D.C. BAR # 924092
                    Civil Chief

                    By: _____/s/_____
                    JEREMY S. SIMON, D.C. BAR #447956
                    Assistant United States Attorney
                    555 4th Street, N.W.
                    Washington, D.C. 20530
                    (202) 252-2528
                    Jeremy.simon@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>    Plaintiff,<br><br>v.<br><br>TOM VILSACK, Secretary of Agriculture, *et al.*,<br><br>    Defendants. | Civil No. 1:16-cv-00914 (CRC) |

**MEMORANDUM IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION
TO PLAINTIFF'S MOTION**

Defendants, Tom Vilsack, in his capacity as Secretary of the United States Department of Agriculture ("USDA"), and USDA, by and through undersigned counsel, hereby move for summary judgment and oppose Plaintiff's competing motion.

This is the second lawsuit filed in this Court by Animal Legal Defense Fund ("Animal Legal") against USDA that concerns the Cricket Hollow Zoo. The first lawsuit, *ADLF v. Vilsack*, Case No. 14-cv-1462 (CKK) (D.D.C.) (hereinafter, "*Animal Legal I*"), challenged the agency's decision to renew the license issued to Cricket Hollow pursuant to the administrative renewal procedures set forth in the agency's regulations. In that case, Animal Legal claimed that those procedures, which do not require exhibitors to demonstrate compliance with the Animal Welfare Act ("AWA" or the "Act") as a condition of renewal, were unlawful and that Cricket Hollow's license should not have been renewed because it allegedly was not in compliance with the Act at the time of renewal. That lawsuit was decided in USDA's favor, *see Animal Legal Def. Fund v.*

1

*Vilsack,* 169 F. Supp. 3d 6 (D.D.C. 2016), and is now on appeal to the D.C. Circuit.[1] Animal Legal had filed a similar lawsuit in the Eleventh Circuit, which has been finally resolved in the agency's favor. *See Animal Legal Defense Fund v. U.S. Dep't of Agric.*, 789 F.3d, 1206, 1225 (11th Cir. 2015) (holding that the USDA "exercised its expertise to craft a reasonable license renewal scheme based on a permissible construction of the [Animal Welfare Act]").

The instant action, also filed under the Administrative Procedure Act, seeks to challenge an agency decision denying Animal Legal's request to intervene in a pending administrative enforcement proceeding brought by USDA's Animal and Plant Health Inspection Service ("APHIS") against the operators of Cricket Hollow Zoo. *See In re* Pamela J. Sellner Tom J. Sellner, etc., et al., AWA Dockets 15-0152, 15-0123, 15-0154, 15-0155. Animal Legal had moved to intervene in this administrative proceeding while *Animal Legal I* was pending in this Court and based its request to intervene largely on the flawed reasoning advanced in that action – namely, Animal Legal's unsupported belief that, by renewing Cricket Hollow's license in accordance with its regulations, USDA had demonstrated a lack of commitment to fulfilling its regulatory enforcement obligations and thus Animal Legal's participation was necessary in light of this abdication of duty by the agency. In other words, although asserting a generalized interest in animal welfare, the motion to intervene also sought to advance, at least in part, a separate

---

1    Although on appeal, the judgment in favor of USDA in that lawsuit has res judicata effect with respect to any arguments concerning the issue raised in that lawsuit that Animal Legal may assert in this proceeding. *Hunt v. Liberty Lobby, Inc.,* 707 F.2d 1493, 1497 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court.")

agenda; specifically, Animal Legal's position – also argued in *Animal Legal I* – that USDA was not an effective regulator[2] as well as the closure of Cricket Hollow Zoo. (AR 52-53, 57)

For reasons set forth below, Plaintiff has failed to establish that the agency's decision denying Animal Legal's request to intervene violated the APA.

## **FACTUAL BACKGROUND**

On July 30, 2015, in an exercise of its enforcement authority under the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131-2159 (2012), APHIS filed an administrative complaint against Cricket Hollow Zoo, Inc. and the Sellners (collectively, "Cricket Hollow"). (AR 3-23) The Complaint recounted prior regulatory activities taken by APHIS against Cricket Hollow, including prior notices of violations, the prior imposition of civil penalties, and the suspension of Cricket Hollow's license in June 2015 pursuant to 7 U.S.C. § 2149(a). The Complaint alleged that, notwithstanding these actions, Cricket Hollow has continued to fail to comply with the minimum requirements under the APA. It identified numerous alleged violations of the Act by Cricket Hollow with respect to the care and treatment of animals exhibited in the Zoo. An administrative hearing on the Complaint is scheduled for January 24, 2017 to January 27, 2017. (Ex. 1, Order)

In October 2015, Animal Legal moved to intervene in this administrative proceeding. (AR 50-87) The premise of Animal Legal's motion for intervention was its unsupported opinion that USDA was not committed to fulfilling its regulatory responsibilities and that the filing of the

---

2   As established in *Animal Legal I*, that argument conflates the agency's distinct enforcement scheme, which affords due process protections to the exhibitor, with the purely administrative process for renewal. *See also Animal Legal Def. Fund*, 789 F.3d at 1209-10 ("Given the thousands of exhibitors across the country and its limited resources, USDA conducts license renewal through a purely administrative procedure. . . . USDA's licensing regulations constitute a reasonable policy choice balancing the conflicting congressional aims of due process and animal welfare[.]").

3

administrative Complaint against the Zoo was only a "tactic" to "bolster" USDA's legal position in *Animal Legal I.* (AR 52-53) Beyond this flawed legal argument, Animal Legal offered no evidence for the implication in the motion to intervene that USDA could not adequately represent the public interest in addressing the specific violations at issue. It attached as the sole exhibit to its motion to intervene the federal court Complaint in *Animal Legal I.* (AR 59-87)

The implication in Animal Legal's motion that USDA was not fulfilling its enforcement function has no basis in the record. Indeed, contrary to Animal Legal's conclusory allegation, administrative enforcement proceedings obtaining orders imposing civil penalties, and suspending and revoking licenses are not uncommon.[3] Information about these proceedings, including the specific penalties imposed on respondents, is publicly available from the USDA's Office of the Hearing Clerk (OHC), and other online sources. *See, e.g.,* https://www.aphis.usda.gov/wps/portal/aphis/newsroom/ (APHIS publishes press releases about AWA enforcement actions); http://nationalaglawcenter.org/ decisions (posting decisions of the Judicial Officer); http://www.oaljdecisions.dm.usda.gov (posting decisions by the Office of Administrative Law Judges (OALJ) and daily log of filings with the OHC); https://www.aphis.usda.gov/wps/portal/enforcementactions (APHIS's website posting enforcement actions).[4]

---

3   Examples of enforcement actions from the 2010 to 2015 time period are available at https://www.aphis.usda.gov/wps/portal/enforcementactions.  According to the USDA website, 81 administrative complaints were pending in 2014. *See* https://www.aphis.usda.gov/wps/portal/aphis/resources/enforcement-actions (click on "APHIS overall" under "enforcement summaries" heading).

4   The OIG audit referenced by Animal Legal (ECF No. 12 at 11 n.6) does not support the Plaintiff's assertion that the filing of administrative enforcement complaints is not common.  Cases that warrant formal prosecution undergo Office of the General Counsel ("OGC") review for legal sufficiency prior to issuance of a formal administrative complaint.

4

USDA opposed Animal Legal's motion to intervene on several grounds, including that (a) USDA's Rules of Practice, 7 C.F.R. § 1.130, *et seq.*, do not provide for intervention, (b) the APA, 5 U.S.C. § 555(b) does not afford a right of intervention and (c) section 555(b) is inapposite in any event because Animal Legal is not an "interested person" as required by that provision and Animal Legal's participation would impede the orderly conduct of the proceeding. (AR 93-115)

In reply, Animal Legal made one argument – that Animal Legal had tried to provide relevant evidence to the agency for use in the administrative proceeding but USDA rejected that offer. (AR 118-125) Animal Legal argued that "[b]ecause [USDA] has demonstrated unwillingness to use – let alone accept – ALDF's relevant and reliable evidence, ALDF seeks intervenor status to present that and other information to 'assist the agency decisionmaking.'" (AR 119). The evidence that Animal Legal offered was from its summary judgment filing in an Endangered Species Act case that Animal Legal had brought against Cricket Hollow Zoo. That litigation focused on specific instances related to the Zoo's treatment of a small subset of its animals (lemurs and tigers) and thus could have had only limited potential relevance, if any, to the far more expansive enforcement action.[5] *See Kuehl v. Sellner,* 161 F. Supp. 3d 678, 687-88, 713-718 (N.D. Iowa 2016).

---

None of the OIG audits speaks to the number of administrative enforcement actions pursued by APHIS through the OGC. The 2014 audit concerned APHIS's oversight of research facilities, and focused on APHIS's pre-litigation stipulations and recommended civil penalties, not referrals to OGC. (*See No.* 33601-0001-41, *available at* http://www.usda.gov/oig/webdocs/33601-0001-41.pdf).

5  Of the numerous violations alleged in the administrative complaint, only a few specifically reference tigers and lemurs, which were the only animals at issue in the Endangered Species Act case. (AR 3 – 19, *e.g.,* ¶¶ 10(i), 14(a), 14(c) and 16(f)).

5

In arguing that USDA was unwilling to accept this material, Animal Legal misconstrues USDA's response to this offer. As contemporaneous emails establish, USDA counsel explained that she was not "comfortable" with Animal Legal's proposal to share evidence and discuss pending Animal Welfare Act matters in light of the pending litigation between Animal Legal and USDA in federal district court which concerned USDA's renewal of Cricket Hollow's license. (AR 121) Thus, in declining that offer, USDA's counsel was not demonstrating an indifference to developing its case against Cricket Hollow, but rather a concern that it would be inappropriate to collaborate with Animal Legal in the enforcement action against Cricket Hollow given the allegations made by Animal Legal against USDA in pending federal court litigation.

On July 30, 2015, the Administrative Law Judge denied the motion for intervention. (AR 126-127) Animal Legal appealed that decision to the Judicial Officer pursuant to 7 C.F.R. § 1.145, arguing that (a) the APA requires that agencies provide interested third parties with an opportunity to participate, (b) Animal Legal has an interest in the proceeding that requires participation under the APA, (c) the USDA's Rules of Practice do not foreclose intervention, and (d) there was no valid reason to deny intervention. (AR 131-158) USDA opposed that appeal (AR 182-211) and, by order dated March 2016, the Judicial Officer denied the appeal. (AR 212-220).

In May 2016, Animal Legal filed a Complaint in this Court alleging that the agency's denial of its request to intervene violated the APA in two ways. First, Animal Legal contends that "[b]y denying ADLF the opportunity to participate in the ongoing administrative proceedings against Cricket Hollow Zoo on the basis of its interpretation that intervention is foreclosed, the USDA created a blanket prohibition on ALDF's participation in an adjudicatory proceeding, in violation of the APA, 5 U.S.C. §§ 554(c), 555(b)." (Compl. ¶ 91) Second, Animal Legal contends that the

6

agency violated the APA by concluding that Animal Legal was not "an 'interested party' without explaining the difference between 'party' and 'interested party,' and by concluding, without support, that ALDF's participation as an 'interested person' would disrupt the 'orderly conduct of the public business.'" (Compl. ¶ 99)

## ARGUMENT

This lawsuit raises two discrete issues as identified in paragraphs 91 and 99 of the Complaint. In Count I of the Complaint, Animal Legal contends that the Judicial Officer's ruling upholding the denial of the motion for intervention amounted to a blanket prohibition on intervention in USDA proceedings that violates the APA. In Count II, Animal Legal contends that the Judicial Officer erred in defining the term "interested parties" in 5 U.S.C. § 554(c) by utilizing the definition of the term "party" that appears in the APA. Animal Legal also asserts that the Judicial Officer's determination that Animal Legal's participation would disrupt the "orderly conduct of public business" within the meaning of 5 U.S.C. § 555(b) was arbitrary and capricious.

Ultimately, the Judicial Officer determined that neither section 554(c) nor 555(b) supported Animal Legal's request for intervention based on the applicable record and the applicable standard set forth in each provision. That determination does not reflect a blanket prohibition on intervention but rather the application of the statutory standard to the distinct circumstances at issue here. Moreover, because the agency has discretion to determine when intervention would disrupt the orderly conduct of proceedings particular to the agency, and Animal Legal's basis for intervention was based solely on unsupported assertions of agency indifference to its statutory

obligations, Animal Legal's challenge to the decision denying its request for intervention should be denied.

As a threshold matter, moreover, the issues raised by Animal Legal are subject to review based solely on the limited record of the administrative proceedings as they relate to Animal Legal's motion to intervene. That record was designated in Defendants' filing on August 11, 2016. (ECF No. 9) Plaintiff cannot raise arguments in this lawsuit that were not raised during the administrative proceeding, nor can Plaintiff rely on declarations and/or other evidence that are not part of the Administrative Record. *See Brodie v. HHS*, 796 F. Supp. 2d 145, 157 (D.D.C. 2011) ("Arguments that are not raised before an administrative agency cannot be raised, for the first time, to the reviewing court."); *Theodore Roosevelt Conservation Partnership v. Salazar*, 616 F.3d 497,514 (D.C. Cir. 2010) (APA review generally limited to Administrative Record); *see generally United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice"). In that regard, Defendants observe that Plaintiff's motion was accompanied by several attachments, including voluminous declarations, that are not part of the Administrative Record and are therefore not relevant to evaluating the Judicial Officer's decision that is challenged in this action.

**I.     Standard of Review**

Each party moves for summary judgment in this matter. Summary judgment may be granted when the pleadings and the evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986; *Diamond v. Atwood*, 43 F. 3d 1538, 1540 (D.C. Cir.1995).

8

All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986).

Under the APA standard of review, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedures required by law," *id.* § 706(2)(D). The scope of review, however, is "narrow," and "the court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfgr's Ass'n v. State Farm Mutual Auto Insurance Co.*, 463 U.S. 29, 43 (1983); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The arbitrary and capricious standard is "[h]ighly deferential," and "presumes the validity of agency decisions." *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000). Deference is especially appropriate in areas that are "complex and highly technical." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991); *see, e.g., American Farm Bureau Fed. v. EPA*, 559 F.3d 512, 519 (D.C. Cir. 2009); *American Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 233 (D.C. Cir. 2008).

In addition, where a statute is silent or ambiguous on a particular issue, and an agency is authorized to promulgate regulations to implement the statute, a court must defer to the agency's reasonable interpretation of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984); *see, e.g., Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007). An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation being interpreted." *Long*

9

*Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (internal quotation and citations omitted).

In order to satisfy the APA standard of review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *accord Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). The administrative record, however, need not include explicit discussion of every factor that is relevant to the agency's decision so long as the bases for the agency's policy choices are otherwise clear from the nature and context of the challenged action. *See Domtar Maine Corp. v. FERC*, 347 F.3d 304, 311-12 (D.C. Cir. 2003), *cert. denied*, 541 U.S. 1029 (2004). "While [the court] may not supply a reasoned basis for the agency's action that the agency itself has not given, [the court should] uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (internal citation omitted). Moreover, if uncontroversial background information underlying the agency's decision is not expressly set forth in the administrative record, it is proper for the court to consider "declarations that merely illuminate reasons obscured but implicit in the administrative record." *Clifford v. Peña*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (internal quotation omitted); *see Camp v. Pitts*, 411 U.S. at 143 (an agency may submit "such additional explanation of the reasons for the agency decision as may prove necessary").

**II.     Section 555(b)**

Section 555(b) provides in relevant part that "[s]o far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function." *See* 5 U.S.C. § 555(b). Without deciding whether Animal Legal was an "interested person" under this provision, the Judicial Officer held that, "even if I were to find that Animal Legal Defense Fund is an 'interested person,' . . . I would deny the Animal Legal Defense Fund's Appeal Petition because the appearance of the Animal Legal Defense Fund in this proceeding would disrupt the orderly conduct of public business."[6] (AR 216)

Under this provision of the APA, "[c]ourts have long accorded agencies broad discretion in fashioning rules to govern public participation and have for the most part permitted denials of requests for leave to intervene when, for example, other parties to the proceeding adequately represent the would-be intervenor's viewpoint or intervention would broaden unduly the issues considered, or fail to assist the agency's decisionmaking." *Nichols v. Board of Trustees,* 835 F.2d 881, 897 (D.C. Cir. 1987). The Judicial Officer's decision is consistent with this standard.

First, the Judicial Officer determined that the "only issues in this Animal Welfare Act enforcement proceeding are whether the Respondents committed the violations of the Animal Welfare Act and the Regulations alleged in the [administrative] Complaint and, if the Respondents are found to have committed some or all of the alleged violations, the appropriate sanction that

---

6     USDA does not concede that Animal Legal is an "interested person" and continues to reserve the arguments it made in that regard during the administrative proceeding. (AR 182-211)

11

should be imposed on the Respondents." (AR 216) The Judicial Officer concluded that Animal Legal's "stated interests in this proceeding are beyond the scope of this proceeding." (AR 216)

Although the Judicial Officer did not identify in his decision those "stated interests" (ECF No. 12, at 38), they are apparent from Animal Legal's appeal brief to the Judicial Officer and the underlying motion to intervene. In its appeal brief, Animal Legal asserted that it has an interest in the proceeding because, in its opinion, USDA is not adequately performing its discretionary enforcement duties. Animal Legal expressed the belief that the agency "[i]n these proceedings . . . will likely continue to avoid vigorously enforcing the statute, ignoring the AWA purposes." (AR 148) Similarly, in its motion to intervene, Animal Legal asserted that "USDA has consistently shown a general propensity for failing to follow through on its enforcement actions." (AR 57) The basis for that opinion is Animal Legal's flawed legal argument – rejected by the Eleventh Circuit and by this Court in *Animal Legal I* – that the agency's administrative renewal scheme violates the plain language of the AWA (AR 51-53, 139), and unfounded speculation that the enforcement action against Cricket Hollow was a "tactic" to bolster the agency's legal position in those cases. (AR 53 n.1, 140).

Animal Legal stated in the motion to intervene that it has "interests in this matter distinct from those of the USDA." (AR 57) Those interests include advancing its position (also raised in *Animal Legal I*) that USDA is not an effective regulator, which was the underlying premise of the motion to intervene, and, as to Cricket Hollow specifically, its longstanding agenda to close the Zoo and relocate the animals. (AR 57) The Judicial Officer correctly held that these stated interests "are beyond the scope of this proceeding."[7] (AR 216)

---

[7] Animal Legal makes the same, self-serving assertion in its motion when it contends,

12

Animal Legal also asserted in its appeal brief to the Judicial Officer that it has "a significant and particular interest in ensuring the humane treatment and care of animals at the Zoo" and that its intervention is necessary to "protect those interests and ensur[e] the decision-maker has before it all relevant evidence of the Zoo's violations." (AR 141) Animal Legal, however, failed to establish that those interests were not adequately represented by APHIS, which is the component of USDA charged with prosecuting enforcement actions and the component that initiated the enforcement action at issue. Animal Legal offered no evidence to support its position beyond its unsupported assertion that USDA was not a vigorous regulator.

The Judicial Officer also observed that the proceeding at issue was an administrative disciplinary proceeding governed by 7 U.S.C. § 2149 and that that statute does not afford third parties the right to intervene in such proceedings. (AR 217) The Rules of Practice governing such proceedings,[8] moreover, also do not address intervention, *see* 7 C.F.R. § 1.130, *et seq.*, and had been interpreted as not permitting intervention. (AR 217) Thus, based on the nature of the such proceedings, the standard practice in such proceedings, and the fact that Animal Legal's stated interest exceeded the scope of the proceeding, the Judicial Officer had a reasonable basis to

---

based on the same flawed legal argument, that "the agency is not likely to vigorously enforce the AWA against the Zoo." (ECF No. 12, at 25) Animal Legal failed to support this assertion during the administrative proceeding and, therefore, cannot establish that the Judicial Officer erred in not accepting it.

8    Animal Legal engages in a cumbersome and ultimately unconvincing attempt to argue that the Rules of Practice allow intervention even while tacitly acknowledging that no rule addresses it directly. (ECF No. 12 at 7-8). Animal Legal's proposed interpretation of the Rules of Practice does not call into question the Judicial Officer's observation that intervention is not addressed in those rules. Not only is there no Rule of Practice that addresses intervention, but there certainly is nothing in the rules that would allow the conclusion that intervention is available as a matter of right.

conclude that Animal Legal's participation in the proceeding would disrupt the orderly conduct of public business.[9]

The question before the Court in this APA action is not whether it would have reached the same conclusion as the Judicial Officer, but whether that decision is arbitrary, capricious or contrary to law. *See Lubow v. United States Dep't of State*, 783 F.3d 877, 887 (D.C. Cir. 2015) ("But under the APA's standard of review, 'a court is not to substitute its judgment for that of the agency.' . . . Instead, we ask whether the agency's decision 'was based on a consideration of the relevant factors' and whether 'there has been a clear error of judgment.'")

Animal Legal has failed to meet this standard. It argues that the Judicial Officer's reasoning "necessarily applies to all third party 'interested persons'" and amounts to a "flat ban" on interested person participation. (ECF No. 12 at 29-30) But that is incorrect. The Judicial Officer's reasoning was based on the record before it, including Animal Legal's "stated interest" in the proceeding (i.e., advancing its longstanding agenda to close the Zoo and its position that USDA is not a vigorous regulator), which the Judicial Officer reasonably determined went beyond the limited issues presented in the enforcement action. Although the Judicial Officer cited to the agency's Rules of Practice as further support for his decision, the Judicial Officer did not rest his decision solely on that basis. His reasoning left open the possibility that intervention might be permitted

---

[9] The Judicial Officer also determined, in the alternative, that the Administrative Judge's decision denying Animal Legal's motion for intervention is not a "decision" that can be appealed to the Judicial Officer. Animal Legal does not claim error in its Complaint with respect to that aspect of the Judicial Officer's decision and, therefore, that issue is not before this Court. To the extent Animal Legal attempts to address that issue in its motion for summary judgment, a party cannot amend a pleading through a motion. *See, e.g., Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

14

if an "interested person" could establish that intervention was warranted and would not be disruptive under a different record.

Animal Legal also argues that, because the APA applies to all agencies, the Judicial Officer's interpretation of section 555(b) is not entitled to deference. (ECF No. 12, at 33) Animal Legal's argument, however, fails in this context because the statutory standard – whether a requested intervention would be disruptive to a particular proceeding – necessarily requires an agency to utilize its particular expertise to assess how a request for intervention might be disruptive to proceedings unique to the agency. Enforcement proceedings governed by 7 U.S.C. § 2149 are unique to USDA and, therefore, the Court should defer to USDA's assessment of whether those disciplinary proceedings would be disrupted by a non-party's intervention. Because the Judicial Officer articulated a reasonable basis for reaching that conclusion, the Court should defer to the Judicial Officer's determination.

Finally, Animal Legal contends that the Judicial Officer failed to consider Animal Legal's proposal "to limit its participation to avoid delaying or otherwise jeopardizing the orderly conduct of the proceedings." (ECF No. 12 at 4, 30) Animal Legal characterizes its submission to the Judicial Officer as having "described in pinpoint detail how it would provide targeted and extremely relevant information supporting specific allegations set forth in the agency's administrative complaint." (*Id.* at 4) These assertions, however, are not borne out by the actual content of Animal Legal's submission.

Animal Legal asserted in its administrative appeal brief that it "merely seeks to ensure that the USDA decision-maker has before it all evidence relevant to the proceeding including, for example, deposition testimony from the Zoo's owners, veterinary records for the Zoo's animals,

15

and death certificates for those animals that have died under the Zoo's care." (AR 155-56) But Animal Legal did not identify for the Judicial Officer with "pinpoint detail" how the referenced deposition testimony (taken in a different case with more limited allegations) would be relevant to the specific violations at issue or provide any basis for the Judicial Officer to have reason to believe that USDA lacked the referenced records. (AR 156) Animal Legal, moreover, did not propose "to limit its participation" in any specific way, but simply asserted that the Administrative Judge has "a broad set of tools by which to limit the time, evidence, and character or the proceedings" and could "set the bounds of an intervenor's participation." (AR 156).

### III. Section 554(c)

Section 554(c) provides, in relevant part, that "[t]he agency shall give all interested parties opportunity for – (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; and (2) to the extent that the parties are unable so to determinate a controversy by consent, hearing and decision on notice in accordance with sections 556 and 557 of this title." *See* 5 U.S.C. § 554(c). As the Judicial Officer recognized, the APA does not define the term "interested parties" but does define the term "party." (AR 215) The term "party" is defined to "include[] a person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in an agency proceeding, and a person or agency admitted by an agency as a party for limited purposes[.]" *See* 5 U.S.C. § 551(3).

In the absence of a more specific statutory definition, the Judicial Officer reasonably utilized the definition of the term "party" to interpret the term "interested parties." Utilizing that definition, the Judicial Officer correctly observed that Animal Legal had not been named or

16

admitted as a party to the administrative proceeding and, although contending that it should be permitted to intervene, failed to establish that it was "entitled as of right to be admitted as a party." (AR 215)

Animal Legal contends that the Judicial Officer's interpretation of the term "interested parties" was unreasonable because the Judicial Officer did not explain "the difference between 'party' and 'interested party.'" (Compl. ¶ 99) But such an explanation was not necessary to establish the reasonableness of that interpretation given that the APA has a separate provision, section 555(b) discussed above, that addresses intervention by "interested persons." In light of that provision, it was reasonable for the Judicial Officer to determine that the term "interested parties" in section 554(c) referred more narrowly to a "party" rather than more broadly to a "person." Had the Judicial Officer treated the terms "interested parties" and "interested persons" as synonymous – which is essentially the position advanced by Animal Legal – he would have failed to give meaning to distinct terms ("interested parties" versus "interested persons") utilized by Congress. *See Tuaua v. United States,* 788 F.3d 300, 303 (D.C. Cir. 2015) ("[i]t is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates intent to convey a different meaning for those words"). Animal Legal has not identified any case authority establishing that this interpretation is erroneous and the limited authority addressing section 554(c) is not contradictory. *See New York State Dep't of Law v. FCC,* 984 F.2d 1209, 1218 (D.C. Cir. 1993).[10]

---

10   Section 554(c) only applies to "adjudications 'required by statute to be determined on the record after opportunity for an agency hearing. . . .'" *New York State Dep't of Law v. FCC,* 984 F.2d 1209, 1218 (D.C. Cir. 1993). As Animal Legal acknowledges in its motion, the AWA provision that authorizes USDA to administer proceedings concerning AWA licenses, and to issue civil penalties, does not use those words. *See* ECF No. 12, at 27, citing 7 U.S.C. § 2149.

17

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted and Plaintiff's competing motion should be denied.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        D.C. Bar # 415793
        United States Attorney

        DANIEL F. VAN HORN
        D.C. BAR # 924092
        Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov